# In the United States Court of Federal Claims

Nos. 12-19T & 12-23T

(Filed: September 19, 2012)

```
************************************* *
                                      *
POTOMAC ELECTRIC POWER                *
COMPANY AND SUBSIDIARIES,             *
                                      *     Motion for Protective Order; Federal
             Plaintiff,               *     Rule of Evidence 502; Attorney-
                                      *     Client Privilege; Work Product
   v.                                 *     Privilege; Waiver of Privilege;
                                      *     Clawback Arrangements.
THE UNITED STATES,                    *
                                      *
             Defendant,               *
                                      *
************************************* *
```

*David F. Abbott*, Mayer, Brown LLP, New York, New York, for Plaintiff.

*Cory A. Johnson*, with whom were *Kathryn Keneally*, Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, and *Shelley D. Leonard*, and *Gregory S. Knapp*, Trial Attorneys, Tax Division, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant.

OPINION AND ORDER ON PLAINTIFF'S
MOTION FOR A PROTECTIVE ORDER

WHEELER, Judge.

In this tax refund suit involving several leveraged lease transactions, Plaintiff Potomac Electric Power Company and Subsidiaries seeks a protective order with two attributes. The first is a provision that would prevent any disclosure, whether intentional or not, of privileged materials in this proceeding from operating as an equivalent waiver in any other state or federal court proceeding. The second is a "claw-back" arrangement that would allow the parties to retract any inadvertent disclosures of privileged material, as long as the retracting party requested such action within ten business days of becoming aware of any such disclosure.

Defendant opposes both provisions. Although PEPCO has represented in its briefing on this motion that it does not "currently" plan to rely on an advice-of-counsel defense, the Government contends PEPCO has signaled that the company may indeed at least partially rely on such a defense as the case progresses. Because this is so, the Government argues that the terms of PEPCO's proposed protective order would unfairly shift to the Government the burden of reviewing PEPCO's production for privileged material, and also force it to guess whether any such productions were intentional. Moreover, the Government contends that should PEPCO decide to rely on an advice-of-counsel defense, any intentional waivers of privilege that would inhere in such a defense must, under applicable waiver law, apply equally to any and all future cases.

The Court agrees with the Government that the terms sought by PEPCO are not warranted under the relevant law governing privilege, waiver, and evidence. However, because a court-ordered protective order is necessary to fully protect the parties against certain potential consequences from any *inadvertent* disclosures of privileged materials, the Court will enter a separate order, limited to such disclosures. PEPCO's motion for a protective order is therefore GRANTED in part and DENIED in part.

## Background

Plaintiff Potomac Electric Power Company and Subsidiaries ("PEPCO") brings its motion for a protective order pursuant to Rule of the Court of Federal Claims ("RCFC") 26(c) and Federal Rule of Evidence ("FRE") 502. The former provides that the Court, "for good cause, may issue an order to protect a party" from, inter alia, "undue burden or expense" in the discovery process. The latter, a 2008 addition to the FRE, was enacted in response to certain specific concerns regarding the increasing costs that parties face in guarding against the consequences that can result from the inadvertent disclosure of privileged information, especially in discovery processes involving the large-scale exchange of electronically stored information ("ESI"). *See* FRE 502 advisory committee's note; Rajala v. McGuire Woods, LLP, 2010 WL 2949582, at *4 (D. Kan. July 22, 2010) (noting that FRE 502 "was enacted … to address the conflict among courts regarding the effect of *inadvertent* disclosures of information protected by the attorney-client privilege or work product immunity…. [and to] validate[] certain clawback provisions or agreements") (emphasis added).

In order to understand the terms and operation of FRE 502, it is useful to begin with the long-standing doctrine governing the scope of privilege waivers, once made.[1]

---

[1] There is no material difference between the attorney-client and work product privileges with respect to the effect of any waiver made as to either, and the following discussion therefore treats the two privileges concurrently for the purposes of this motion. However, the Court notes that there are important differences, not relevant here, between the attorney-client and work product privileges regarding when a waiver has been made in the first place. See, e.g., Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 133 (Fed. Cl. 2007).

2

First, the "widely applied" rule is that any "waiver applies to all other communications relating to the same subject matter." Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citing, inter alia, Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1416 (Fed. Cir. 1997)). Secondly, and of particular importance to PEPCO's motion, "[o]nce … privilege has been waived, the privilege is generally lost for all purposes and in all forums." Genentech,, 122 F.3d at 1416; see also, e.g., 8 Charles Alan Wright et al., Federal Practice and Procedure § 2016.2 (3d ed. 2012) (noting that a waiver generally "applies to the entire world[,]" such that "waiver due to an interaction with one person ordinarily deprives the privilege-holder of the right to assert the privilege against anyone else"); Bittaker v. Woodford, 331 F.3d 715, 730 n.2 (9th Cir. 2003) (collecting cases) (O'Scannlain, J., concurring).

These rules are "grounded in principles of fairness." In re Seagate Tech., LLC, 497 F.3d 1360, 1372 (Fed. Cir. 2007). The "subject matter" waiver rule "serves to prevent a party from simultaneously using … privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones." Id. (internal citation omitted). Similarly, the "all purposes, all forums" rule precludes a party from "pick[ing] and choos[ing] among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993) (quoting Permian Corp. v. United States, 665 F.2d 1214, 1221 (D.C. Cir. 1981)). Neither work product nor attorney-client privilege is "designed for such tactical employment." Permian, 665 F.2d at 1221 (discussing attorney-client privilege); see also In re Steinhardt, 9 F.3d at 235 (noting that courts have extended Permian's reasoning to work product privilege as well).

However, in an age of litigation that, increasingly, involves the exchange of large amounts of ESI during the discovery process, the risk that inheres in these rules – namely, that "any disclosure (however innocent or minimal) [would] operate as a subject matter waiver of all protected communications or information" – began to engender "widespread complaint[s]" that the "litigation costs necessary to protect against waiver of … privilege … ha[d] become prohibitive[.]" FRE 502 advisory committee's note. In direct response to these concerns, therefore, Congress enacted FRE 502 in 2008. The rule puts in place certain safeguards respecting the inadvertent disclosure of privileged information, as follows.

First, FRE 502(a) provides that a disclosure will result in a subject matter waiver *only* when (1) the waiver is "intentional," and (2) the disclosed and undisclosed communications or information "ought in fairness to be considered together." Second (and conversely), FRE 502(b) provides that a disclosure made inadvertently will *not* operate as a waiver, so long as "the holder of the privilege [both]… took reasonable steps to prevent disclosure" and "promptly took steps to rectify the error."

3

As the Advisory Committee expressly recognized, however, these measures, standing alone, are not sufficient to reduce the risk of exposure to parties engaged in the exchange of complex ESI, for two reasons. First, while it is "well-established … that parties can enter an agreement to limit the effect of a waiver by disclosure between or among them[,]" in the absence of a court order ratifying the agreement, it "can bind only the parties[.]" FRE 502 advisory committee's note. Secondly, even when the parties obtain a court order ratifying a confidentiality agreement, the law governing whether such an order is enforceable in other proceedings remains at least somewhat unsettled. Id. Thus, as the Advisory Committee stated:

> the utility of a confidentiality order in reducing discovery costs is substantially diminished if it provides no protection outside the particular litigation in which the order is entered. Parties are unlikely to be able to reduce the costs of pre-production review for privilege and work product if the consequence of disclosure is that the communications or information could be used by non-parties to the litigation.

Id.

FRE 502(d) therefore further provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any other federal or state proceeding."[2]

Both the Advisory Committee Notes and Statement of Congressional Intent regarding the rule emphasize that beyond these modifications (and a few others not relevant here), FRE 502 does not alter any aspect of the substantive doctrines regarding privilege and waiver. See FRE 502 advisory committee's note ("[W]hile establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally."); Statement of Congressional Intent Regarding Rule 502 of the Federal Rule of Evidence ("The rule addresses only the effect of disclosure, under specified circumstances, of [privileged information] … on whether the disclosure itself operates as a waiver of the privilege or protection for purposes of admissibility of evidence[.]… The rule does not alter the substantive law regarding attorney-client privilege or work-product protection in any other respect[.]").

As PEPCO acknowledges, as the party seeking the protective order, it bears the burden of showing "good cause" for the court's entry of the same. See Lakeland Partners, L.L.C. v. United States, 88 Fed. Cl. 124, 133 (Fed. Cl. 2009). In order to establish good

---

[2] In addition, FRE 502(e) codifies the rule that "[a]n agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order."

cause, PEPCO must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" that it is entitled to the order. Gulf Oil Co. v Bernard, 452 U.S. 89, 102 n.16 (1981).

Discussion

As PEPCO notes, the litigation underlying this motion is complex, and involves the proper federal tax treatment of certain leveraged lease transactions entered into by that company. Both parties agree that discovery in this case will involve the production, at least on PEPCO's part, of large amounts of ESI, and that the scale of that production will necessarily entail some risk of an inadvertent disclosure of privileged material. The parties also agree that, in order to fully guard against the possibility that such an inadvertent disclosure could effect a subject matter waiver as to third parties or in other court proceedings, a court order pursuant to FRE 502 is necessary. There, however, the parties' agreement ends, as the Government vigorously contests the appropriateness of two specific provisions sought by PEPCO.

As noted above, the first of these proposed provisions would apply to any materials that may be inadvertently disclosed in the course of the discovery process. Essentially, this provision would entitle either party to "claw back" any such disclosures, so long as the party requested such action "within ten (10) business days of becoming aware of the disclosure[.]" Proposed Order, ¶ 2; see also id. at ¶¶ 3-10 (setting forth a detailed proposed process for claw back). PEPCO is not, however, concerned solely with the potential effects of inadvertent disclosures, but also "anticipates that disclosure could occur in [a second] way[]" as well. PEPCO Mem. at 2. Thus, PEPCO also seeks a provision to the effect that should either party choose to "*intentionally* disclose[] privileged materials and rel[y] on those materials at trial, [that party] [w]ould [nonetheless] be permitted to preserve those privileges in other Federal and State proceedings[.]" Id. (emphasis added); see also Proposed Order ¶ 1.[3] The Court will address each of these proposed provisions in turn below.

---

[3] PEPCO's explanation regarding the need for such a provision is not wholly consistent: despite seeking this protection, the company is also at pains to assert that it "does not *currently* intend to rely on the U.S. Federal income tax advice [it] received at the time it entered into the transactions [at issue] as a defense[.]" PEPCO Reply Mem. at 4 (emphasis added). At oral argument, the Government requested, and PEPCO agreed in principle, that at some point in the relatively near future, a deadline be set (either by court order or by agreement of the parties) by which PEPCO must commit to a course of action on this issue. The court will therefore revisit the question with the parties no later than the next scheduled conference in this case, currently set for October 25, 2012. At any rate, because the requested provision dealing with intentional disclosures would plainly serve no purpose should PEPCO ultimately choose not to make any such disclosures, the Court assumes, for the purposes of this motion, that PEPCO will in fact make at least some intentional disclosures of otherwise privileged information in the course of this litigation.

I.      The Proposed "Claw Back" Clause

So-called "claw back" provisions "essentially 'undo' a document production[,]" and require the return of documents that a party belatedly determines are privileged. United States v. Sensient Colors, Inc., 2009 WL 2905474, at *2 n.6 (D.N.J. Sept. 9, 2009). Under the terms of FRE 502(b), either party is entitled – even in the absence of a court-ordered protective order – to "claw back" any inadvertent disclosures, provided that the party takes reasonable steps to both (1) prevent the disclosure, and (2) "promptly … rectify the error." However, arguing that these default standards are insufficiently definite to provide meaningful safety, PEPCO seeks to replace them with a provision allowing either party to retract any inadvertently disclosed materials so long as the producing party "takes reasonable precautions to avoid such inadvertent disclosure," and, "within ten (10) business days of becoming aware of the disclosure, promptly requests its destruction." Proposed Order ¶ 2.

While the Government has no objection to the claw back "of any privileged communication that is mistakenly disclosed" by either party, Govt. Resp. Mem. at 11, it argues that the provisions of RCFC 26(b)(5)(B)[4] and FRE 502 already provide adequate protection in this regard. Moreover, especially in light of the substantial possibility that PEPCO may rely on an advice-of-counsel defense, the Government contends that the Plaintiff's proposed standards would force it to guess whether a given disclosure was made intentionally or not. The Government further contends that these circumstances would place an "onerous and confusing" burden on it in reviewing PEPCO's document productions, and also put the Government at a strategic disadvantage for various potential tactical reasons. Id. at 13. Counsel for PEPCO partially ameliorated the Government's concerns at oral argument on this motion, conceding that it would be reasonable to require PEPCO to notify the Government of any intentionally made disclosures. Nonetheless, the Court finds that Plaintiff has failed to demonstrate good cause for the adoption of its proposed claw back standard.

"Notwithstanding the easing of the waiver doctrine brought about by the enactment of Rule 502(b), the Rule 'does not remove the parties' responsibility to take reasonable precautions against [the] disclosure of privileged documents.'" Williams v. District of Columbia, 806 F. Supp. 2d 44, 49 (D.D.C. 2011) (quoting Amobi v. District of Columia Dep't of Corrs., 262 F.R.D. 45, 51 (D.D.C. 2009)). While PEPCO's proposed language recites that standard, it also grants the parties permission to retract any inadvertent disclosure "within ten (10) business days of becoming aware of [it]," regardless of when such a discovery is made or whether the timing and other

---

[4] RCFC 26(b)(5)(B), which is analogous to the Federal Rule of Civil Procedure ("FRCP") of the same number, enacts procedural rules by which parties may present and address issues arising out of the inadvertent disclosure of privileged information; however, it "does not address [the substantive issue of] whether the privilege or protection that is asserted after production was waived by the production." FRCP 26 advisory committee's note (2006 Amendments).

circumstances of the discovery is demonstrative of reasonable diligence.  Proposed Order ¶ 2.

Thus, the more specific portion of PEPCO's proposal, the ten-days-from-discovery grace period, appears to swallow the more general one, nominally requiring that a party take "reasonable precautions" in order to reap the benefit of the proposed order.  See, e.g., Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 645 n.27 (Fed. Cl. 2007) ("The general rule of interpretation is that general terms yield to more specific ones[.]") (internal citation omitted).  Indeed, it is precisely for the greater certainty provided by the more specific ten-day rule that PEPCO seeks the entry of such a provision.  See PEPCO Mem. at 8.

The Court agrees with the Government that the standards set forth in FRE 502(b) are both fair and sufficiently definite to provide the parties with adequate protection against the consequences of any accidental disclosures of privileged information that may occur in the course of discovery.  The Court therefore finds that PEPCO has failed to show good cause why these standards should be altered for the purposes of this case.

II.     The Proposed No-Waiver Clause

The second contested clause in PEPCO's proposed protective order provides, in relevant part:

> [p]ursuant to Federal Rule of Evidence 502(b), the production of documents and data pursuant to this Order shall not result in the waiver of the attorney-client privilege or work-product protection as to those documents and data.  Also, the production of privileged or protected documents or data under this Order shall not result in the waiver of the attorney-client privilege or work-product protection as to those documents and data in any other Federal or State [p]roceeding.

Proposed Order ¶ 1.  As indicated by the opening language of this paragraph, PEPCO contends that such a provision is both contemplated and justified by FRE 502(d), which states, as noted above, that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any other federal or state proceeding."

Although PEPCO's proposed language does not use the word "intentional," its briefing makes clear that its intent here is to allow the company to make intentional disclosures in the instant litigation (for example, pursuant to an advice-of counsel defense) but nonetheless preserve the same privileges with respect to third parties, and/or in other court proceedings.  In short, PEPCO's position is that FRE 502(d) entitles it to a court order overriding the long-standing "all purposes, all forums" waiver rule discussed

above.[5]  See Genentech, 122 F.3d at 1416.  The Court agrees with the Government that this reading of FRE 502(d) finds no support in the Rule's plain language, purpose, or any relevant case law.

First, although FRE 502(d) is not expressly limited to unintentional disclosures, the context of the Rule as a whole makes clear that this provision exists to "close the loop" on the protections that the Rule extends to such disclosures (or at least to such disclosures as have been reasonably protected against and promptly rectified).  That is, although FRE 502(a) and (b) establish standards for what does and does not count as a waiver of privilege, these standards are not, standing alone, sufficient to protect the parties to a litigation from the potential consequences of an inadvertent disclosure.  As explained above – and as also expressly noted by the Advisory Committee – any "agreement to limit the effect of a waiver by disclosure between or among" the parties of a litigation can, in the absence of a court order ratifying the agreement, "bind only the parties."  FRE 502 advisory committee's note.  Moreover, even when the parties obtain such a court order, the case law predating the enactment of FRE 502 was unsettled as to the enforceability of the order in a separate proceeding.  See id.  Thus, without FRE 502(d), subsections (a) and (b) could do no more than protect the parties from the consequences of an accidental disclosure *in the proceeding in which the accidental disclosure was made in the first instance*.  Given the "all purposes, all forums" waiver rule, such protection would be of limited utility, and certainly insufficient to reduce discovery costs.  See id.; see also Rajala, 2010 WL 2949582, at *4 (noting that "it [is] clear that subsections (d) and (e) allow for the enforcement of clawback provisions and agreements").

Further, as the Government points out, under the plain language of FRE 502(d), the other-forum protection offered by a court order pursuant to this provision is expressly limited to disclosures which have *not* resulted in waivers of privilege for the purpose of the current proceeding – which simply cannot be the case with any intentional waivers made in the course of, for example, an advice-of-counsel defense.  See FRE 502(d) (when "[a] federal court … order[s] that the privilege or protection *is not waived by disclosure connected with the litigation pending before the court* … the disclosure is *also* not a waiver in any other federal or state proceeding") (emphasis added).  This reading of

---

[5] In its briefing, PEPCO appears to acknowledge that any waiver of privilege in this proceeding would act as a waiver as to all information or communications on the same subject, for the purposes of this proceeding.  See PEPCO Mem. at 5; Govt. Resp. Mem. at 6 (interpreting PEPCO's brief as conceding this point).  However, given that Paragraph 1 of PEPCO's proposed order is intended to apply to *intentional* disclosures, its language also appears to at least arguably exempt the parties from the subject matter waiver rule as well.  See Proposed Order ¶ 1 ("[T]he production [whether intentional or unintentional] of documents and data pursuant to this Order shall not result in the waiver of the attorney-client privilege or work-product protection as to those documents and data.").  However, because the Court determines, for the reasons explained below, that PEPCO's reading of FRE 502(d) is in any event unwarranted, it will assume for the purpose of this motion that PEPCO does not seek an exemption from the subject matter waiver rule as to any intentional disclosures made in this proceeding.

FRE 502(d) is, moreover, further supported by unambiguous statements (quoted in the "Background" section, above) from both Congress and the Advisory Committee, to the effect that FRE 502 does not alter any aspect of the substantive doctrines regarding privilege and waiver.  See FRE 502 advisory committee's note; Statement of Congressional Intent Regarding Rule 502 of the Federal Rule of Evidence.

Finally, none of the cases cited by PEPCO in support of its argument are to the contrary.  First, the holding of Rajala is limited to the court's entry of an order creating a claw back mechanism; moreover, the case repeatedly notes that FRE 502 was enacted to "address the conflict among courts regarding the effect of *inadvertent* disclosures of [privileged] information." 2010 WL 2949582, at *4 (emphasis added).

Secondly, the facts of Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp., 2009 WL 464989 (N.D. Tex. Feb. 23, 2009) are easily distinguishable from those present here – and, in fact, suggest an explanation for FRE 502(d)'s arguably conspicuous omission of language expressly limiting its application to inadvertent disclosures.  The disputed disclosures in that case were those that are made *mandatory* by FRCP (and RCFC) 26(a).  PEPCO is correct that, in this context, the Whitaker court stated, "[a]lthough [FRE 502] address[es] the consequences of an inadvertent disclosure of privileged information, this is not the extent of the rule.  Instead, the plain language of the rule addresses the 'disclosure of a communication or information covered by the attorney-client privilege or work-product protection' in various 'circumstances.'" Id. at *4.  However, the mere existence of certain limited circumstances in which a purposeful disclosure of privileged information (such as one made pursuant to the mandatory directive of FRCP 26(a)) may nonetheless fall properly within the ambit of FRE 502 does not lead to the conclusion that *any* purposeful disclosure is entitled to the same protection.  Such a reading of FRE 502 would eviscerate the well-established and long-standing doctrine regarding privilege waivers, in direct contravention to the Rule's stated purpose, as well as to basic notions of fairness.

Lastly, nothing in either Form 14 of the Appendix to the RCFC or any of the exemplary protective orders issued by this Court in other cases, and cited by Plaintiff, indicate that this Court has ever extended the reach of FRE 502 in the manner requested by PEPCO.  For example, while the protective order entered on March 26, 2012 by Judge Allegra in RDA Constr. Corp. v. United States, No. 11-555C, does not expressly limit its application to inadvertent disclosures, it is quite clearly limited to disclosures made "pursuant to this Order," which goes on to discuss (only) accidental disclosures, as well as the process by which the parties could claw back any such disclosures.

The Court therefore finds that PEPCO has failed to show good cause for the entry of a protective order containing language that would exempt the parties from the normal operation of the "all purposes, all forums" waiver rule with respect to any intentional disclosures the parties may make in the course of this litigation.

9

III.    Protective Order

Although the Court does not find good cause to enter a protective order in the terms requested by Plaintiff, it nonetheless recognizes that a court order is necessary for the parties to avoid the potential consequences, discussed above, of any inadvertent disclosures that may occur on the part of either side in the course of discovery. The Court further finds that although the terms of the protective order entered by Judge Allegra in <u>RDA Constr. Corp. v. United States</u>, No. 11-555C, do not bolster Plaintiff's argument, such terms do suffice to address the parties' legitimate concerns respecting potential inadvertent disclosures. The Court will therefore issue a separate order largely adopting the terms of the <u>RDA Constr.Corp</u> protective order, with slight modifications to remove any arguable ambiguity as to the order's sole application to accidental disclosures. The text of this protective order is included with this opinion as Appendix A.

<u>Conclusion</u>

For the reasons stated above, PEPCO's motion for a protective order is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

<u>s/Thomas C. Wheeler</u><br>
THOMAS C. WHEELER<br>
Judge

APPENDIX A

# In the United States Court of Federal Claims

Nos. 12-19T & 12-23T
(Filed: September 19, 2012)

```
************************************* *
                                      *
POTOMAC ELECTRINC POWER               *
COMPANY AND SUBSIDIARIES,             *
                                      *
            Plaintiff,                *
                                      *
 v.                                   *
                                      *
THE UNITED STATES,                    *
                                      *
            Defendant,                *
                                      *
************************************* *
```

_____

**PROTECTIVE ORDER**
_____

Upon consideration of Plaintiff's motion for a protective order and for good cause shown, it is hereby **ORDERED** as follows:

1. Pursuant to Fed. R. Evid. 502, the inadvertent production of documents and data pursuant to this Order shall not result in the waiver of the attorney-client privilege or work-product protection as to those documents and data.  Also, the inadvertent production of privileged or protected documents or data under this Order shall not result in the waiver of the attorney-client privilege or work-product protection as to those documents and data in any other Federal or State proceeding.  Any privileged material inadvertently disclosed shall be and remain the property of the producing party.

2. If a party determines that it has produced a document or data to which it wishes to assert a claim of privilege or protection, its counsel shall notify opposing counsel promptly of its claim.  As part of the notification, the party's counsel shall

11

   identify, by Bates number(s), the document(s) as to which the party is asserting a claim of privilege or protection.

3.  A party receiving documents and data shall, through its counsel, notify opposing counsel upon identification of any document(s) or data that appears to be potentially privileged or protected.  Such notification shall not waive the party's ability to challenge any assertion of privilege or protection made by the opposing party as to the identified document(s).  As part of the notification, the party's counsel shall identify, by Bates Number(s), the document(s) or data at issue.  The party's counsel shall segregate the specified document(s) or data, as well as any copies thereof, from the other materials, and the party's counsel shall not use the information in the potentially privileged or protected document(s) or data, except as provided by RCFC 26(b)(5)(B), for a period of 14 days after the date on which the party's counsel notifies opposing counsel.  Within that 14-day period, or any other period of time agreed to by the parties, the opposing party shall determine whether it will assert a claim of privilege or protection as to the identified document(s), and its counsel shall notify the party's counsel of its determination.

4.  Upon receiving notice of a claim of privilege or protection by the a party regarding a produced document or data, opposing counsel shall segregate, with promptness and in accordance with RCFC 26(b)(5)(B), the specified document or data, as well as any copies thereof, and opposing counsel shall not use the information in the specified document or data, except as provided by RCFC 26(b)(5)(B), until after the claim is resolved.  If the court upholds – or if the opposing party does not challenge – the party's claim of privilege as to a produced document or data, opposing counsel shall return or dispose of the specified document or data, as well as any hard or electronic copies thereof.  Within five business days of taking such measures, the opposing party shall certify that it has complied with the requirements of this paragraph.

   IT IS SO ORDERED.

                  s/Thomas C. Wheeler
                  THOMAS C. WHEELER
                  Judge